IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PRIORITY RECORDS, LLC, et al.,

        Plaintiffs,

  vs.                                                CIVIL NO.  07-920 WJ/LFGS

SYLVIA PADILLA,

        Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING SANCTIONS, DENYING ORDER TO SHOW CAUSE,
## AND DENYING ATTORNEY FEES

THIS MATTER is before the Court on Plaintiff Priority Records, LLC.. et al.'s ("Plaintiffs") Motion for Sanctions and For Order to Show Cause [Doc. 34]. Plaintiffs ask the Court to impose various sanctions on Defendant Sylvia Padilla, requiring her to pay Plaintiffs' costs incurred in obtaining and Order Compelling Discovery; to pay costs and attorney fees in the amount of $500 based on her failure to respond to Plaintiffs' discovery requests; and to show cause why she should not be held in contempt. No response to the Motion is necessary.

In Cervantes' work, Don Quixote, one of the most important examples of classic Spanish literature, we read of Don Quixote's admonition to Sancho Panza on the qualities of good governance. Two of his oft-cited admonitions are appropriate considerations in this case. First, Don Quixote advises, "If per chance thou permit the bar of justice to bend, let it be not by the weight of a gift, but by that of mercy." Miguel de Cervantes, Don Quixote, Ch. XLII (1615).

Second, Don Quixote tells Sancho, the governor-to-be, "When equity may and should be brought into play, press not the ultimate rigour of the law against the guilty, for the reputation of the

stern judge stands not higher than that of the compassionate." Id. These admonitions have significant application here, as this case presents a situation where the rod of justice should bend and where compassion and mercy need be considered.

## Background

Plaintiffs Priority Records, LLC, UMG Recordings, Inc., BMG Music and Warner Bros. Records, Inc. are all recording companies, limited liability companies, partnerships, or major corporations involved in the music industry. They either own or license copyrights to various musical compositions and recordings, including eight songs which Defendant Sylvia Padilla ("Padilla") obtained from a peer-to-peer ("P2P") shared file.[1]

The act of downloading music without paying a user, license or copyright fee is, of course, a violation of the copyright holder or licensee's rights and violates the Federal Copyright Act. However, it is hardly the despicable, outrageous, and heinous act alleged by Plaintiffs ("The conduct of Defendant [in downloading these eight albums] is causing and . . . will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money . . . .") [Doc. 1, Complaint, ¶ 19].

Downloading songs via the Internet is an act likely committed by virtually every computer-literate student in America. The fact that this practice is so widespread and known to virtually every computer user does not excuse the conduct, as it is illegal, and relatively inexpensive options to download music for a fee are readily available. Still, the Plaintiffs paint by too broad a brush by alleging the act committed by Padilla in downloading a P2P file is an act of such "irreparable injury"

---

[1]P2P networks refer to computer systems or processes that enable Internet users to search for files, including audio recordings, stored on other user's computers. Those users allow interested people to transfer exact copies of files from one computer to another by downloading a copy of the file into the user's own computer. This file sharing is with the consent or tacit approval of the computer users.

that these mighty corporations are suffering great harm that "cannot fully be compensated nor measured." Id.

The Complaint contains no allegation, nor was any evidence presented, demonstrating that Padilla is a black marketeer, bootlegger or one downloading songs for commercial gain. There was no evidence that she was hawking songs on eBay, selling them out of the trunk of her car in mall parking lots, or setting up stands of bootlegged CDs at flea markets. Actually, all we know of Padilla, because of her inability to retain counsel, is that she is likely a college student and a fan of American country music, that she was accused of downloading a total of eight songs from eight different albums [Doc. 1, Ex. A];[2] and that she filed a Claim of Exemptions on Executions [Doc. 18].

**Federal Copyright Act**

At the behest of the recording industry, trade associations, their political action committees, and lobbies, Congress enacted, and revised over the years, stiff penalties for those who infringe on a copyright owner's rights. 17 U.S.C. § 504. Consumers and individuals, including P2P users, do not appear to be represented in the debates. *See, e.g.*, list of witnesses at oversight hearing on "Implementation of the NET Act and Enforcement Against Internet Piracy." in H.R. Rep. No. 106-1048, at 186-87.

In 1988, and again in 1999, Congress agreed to increase statutory penalties to deter repetitive violations. *See*, Id., at 186; Berne Implementation Act of 1988, Pub. L. No. 100-568, 102 Stat. 2853; Digital Theft Deterrence and Copyright Damages Improvement Act of 1999, Pub. L. No. 106-160,

---

[2]The eight songs downloaded by Padilla are primarily of country artists Randy Travis, Clint Black, Kenny Chesney, Diamond Rio, and Guns N' Roses. She is apparently also a lesser fan of hip-hop, as she downloaded two songs from Ice Cube and MWA. The specific eight songs downloaded are "MP," "Automobile," "Paradise City," "How Forever Feels," "I Lost It," "A Better Man," "Unbelievable" and "Written in Stone."

113 Stat. 1774.

Notwithstanding Plaintiffs' allegations of losses that are so "great and irreparable" that they "cannot fully be compensated or measured by money," Plaintiffs did not present any evidence of actual damages or lost profits as a result of Padilla's downloading these eight albums. Instead, it appears that Plaintiffs relied on 17 U.S.C. § 504(c) requesting an award of statutory damages.

> Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable . . . in a sum of not less than $750 or more than $30,000 as the court considers just.

It is no surprise that, here, in a case where Plaintiffs' actual damages for the failure to pay a fee to download eight songs would have been *de minimus*, Plaintiffs opted for statutory damages, and sought the minimum statutory damages provided by § 504 -- an award of $750 for each of the eight infringements alleged in the Complaint. Additionally, the Court ordered that Plaintiffs recover their taxable costs of $420. Thus, for the offense of downloading eight songs, the unrepresented defendant was saddled with a $6,420 judgment.

It is abundantly clear why Plaintiffs opted for statutory damages, as they would have been hard-pressed to establish actual damages above a few dollars for the infringement. As the statutory damages of $750 constitute a federal minimum award, the trial Court had no choice but to give Plaintiffs what they sought.

This circumstance has required various judges dealing with these recording industry copyright infringement cases and the usual statutory damage request to suggest that Congress reconsider the statute.

> The Court would be remiss if it did not take this opportunity to implore Congress to amend the Copyright Act to address liability and

>damages in peer-to-peer network cases . . . . The defendant is an individual, a consumer. She is not a business. She sought no profit from her acts . . . . [T]he damages awarded in this case [statutory minimums] are wholly disproportionate to the damages suffered by Plaintiffs.

Capitol Records, Inc. v. Thomas, 579 F. Supp. 2d 1210, 1227 (D. Minn. Sept. 24, 2008).

So, too, the Honorable Shira A. Scheindlin in Yurman Studio, Inc. v. Castaneda, No. 07 Civ. 1241 (SAS), 2008 WL 4949775, at *2,3 (S.D.N.Y. Nov. 19, 2008), expressed the same concern that the alternative mandatory award of statutory damages was outrageous. She noted, "[S]tatutory damages should bear some relation to actual damages suffered . . . [and] cannot be divorced entirely from economic reality."

Such is the case here. There is little relation between the actual harm Plaintiffs suffered and the $6,420 which the Court was required to impose for the act of downloading eight songs. That damage award, while mandated by Congress, bears no relation to Plaintiffs' actual damages, id., and appears to be more in the line with a congressional intent to punish severely any defendant who does violate the Copyright Act.

## **Disparity Between the Parties**

Plaintiffs, national recording companies, corporations, partnerships and limited liability companies are represented by an army of attorneys. Six separate attorneys entered an appearance for Plaintiffs and have pressed their clients' rights under the federal copyright statute.

Padilla, on the other hand, is an individual, perhaps a college student, and without any insurance policy that would provide for a defense to the charges. She did not answer and did not assert factual or legal defenses.

There are defenses aplenty. One United States District Judge faced with a similar student

music file-sharing case suggested, as a viable defense, the question whether "the amount of statutory damages available under the Copyright Act, measured against the actual money damages suffered is unconstitutionally excessive." Atlantic Recording Corp. v. Brennan, 534 F. Supp. 2d 278, 282 (D. Conn. 2008).

Padilla may well have allowed a friend or relative to use her computer. All that Plaintiffs assert is that a download from Padilla's IP address was confirmed, but there is no assertion that Padilla herself, as opposed to another user, performed the download. She could have asserted legal challenges to the statutory damages, comparing them to punitive damages that far exceed the single-digit multiplier of compensatory damages as discussed in State Farm Mut. Auto. Ins. Co. V. Campbell, 538 U.S. 408, 425 (2003). *See also*, Kate Cross, "David v. Goliath: How the Record Industry is Winning Substantial Judgments Against Individuals for Illegally Downloading Music." 42 Tex. Tech. L. Rev. 1031 (Summer 2010).

A review of many Copyright Act violation cases indicates that there are other defenses available that could be asserted. However, to assert complex legal defenses requires the assistance of counsel. In Elektra Entm't Group, Inc. v. O'Brien, No. CV 06-5289 SJO-MAN, Slip Op. At 2 (D.D.C. Mar. 2, 2007)(order recorded in clerk's minutes, doc. 12), the Honorable S. James Otero, District Judge for the Central District of California stated, "The concern of this Court is that in these lawsuits, potentially meritorious legal and factual defenses are not being litigated, and instead, the federal judiciary is being used as a hammer by a small group of plaintiffs to pound settlements out of unrepresented defendants."

Here, Padilla was unrepresented. She likely had no money to secure counsel. She filed no answer or affirmative defenses. As a result, Plaintiffs were victorious without ever having to step foot in court or present the testimony of even a single witness concerning the harm that was so

"great and irreparable" that it "cannot fully be compensated or measured in money."

## **The Result**

Because Padilla defaulted, the Court had no choice but to enter a judgment against her in the amount of $6,000 and to award costs of $420. Those amounts may well be appropriate had Padilla been a bootlegger, black marketeer or had she been involved in some commercial enterprise making a profit from the purloined copyrighted material. Yet, there is no evidence to support anything of that sort. What is more likely is that Padilla, a country and western fan, downloaded music from a P2P file in her home, dorm room or elsewhere to listen to or play for her own use, benefit or pleasure.

The harm Padilla will suffer as a result of her violation of Plaintiffs' rights and the Judgment entered against her is potentially disastrous. Undoubtedly, Plaintiffs have or will record the Judgment. The Judgment will attach to any real property which Padilla has or may hereafter acquire. That will adversely affect any effort to market or sell her property until the lien is satisfied. It will have a devastating impact on her FICA credit scores and will surely be reported by each of the three major credit reporting agencies. Thus, this Judgment or its effects will appear on Padilla's credit report.

The adverse credit report means that Padilla will have difficulty obtaining credit cards; she will pay higher interest rates for automobile purchases; and she likely will be disqualified from buying a home. For any loan she is able to receive, Padilla will surely pay an interest rate much higher than consumers who are without money judgments pending.

In Samuel Taylor Coleridge's Rime of the Ancient Mariner, we read of the mariner who, having committed a grave misdeed, the slaying of an albatross, is forced to wear the dead albatross

around his neck as a constant reminder of his misdeed, and as punishment for his conduct.[3] So, too, it will be with Padilla. This Judgment will weigh heavily around her neck like the Mariner's albatross. For years to come, she will suffer financial hardship, even though the penalty mandated by law far exceeds the harm caused.

In this case, Plaintiffs served discovery on Padilla and she did not answer. Plaintiffs sought and obtained an order of the Court that she respond. [Doc. 31]. She failed to do so. Plaintiffs now ask for imposition of sanctions and request that the Court hold Padilla in contempt and award even more money to Plaintiffs.

It is in this area of the Plaintiffs' requested relief that Don Quixote's admonitions strike home. This is a case that cries out for compassion and bending the bar of justice. It is a case where the ultimate rigor of the law need not be pressed. Plaintiffs were already granted a judgment that is far in excess of any conceivable damage they actually suffered. They now seek sanctions and contempt. Under Rule 37 and the Court's contempt power, additional monetary fines could be assessed on Padilla or, alternatively, she could be incarcerated for violating the Court's order to provide discovery. Rodriguez v. IBP, Inc., 243 F.3d 1221, 1231 (10th Cir. 2001) (a district court has broad discretion in using its contempt power to require adherence to court process). Neither circumstance makes any sense in this case. The New Mexico Constitution prohibits incarceration of individuals because of their inability to pay a debt, N.M. Const. Art. 2, § 21, and, simply stating that a party is in contempt of court, unless the court adds incarceration or a monetary sanction, really adds nothing to the plaintiff's relief.

---

[3]Samuel Taylor Coleridge, "The Rime of the Ancient Mariner," Lyrical Ballads (1798) (the original title was "Rime of the Ancyent Marinere"). Wikipedia, http://en.wikipedia.org/wiki/The_Rime_of_the_Ancient_Mariner (last visited September 20, 2010).

Should the Court issue an order to show cause, it is likely there will be no answer as Padilla is unrepresented and, in the past, has failed to answer. The Court declines to engage in an act of futility; and it declines to further pile on fines and penalties to the already draconian penalties required by Congress.

Under Fed. R. Civ. P. 37, the Court may impose whatever sanctions are "just." The Court has broad discretion in deciding what sanction to impose. Rule 37(b). In this case, the Court exercises its discretion and determines that further sanctions would be unjust.

Plaintiffs further seek an award of attorney fees in the amount of $500. Attorney fees should ordinarily be awarded against a party who fails to participate in discovery. FED. R. CIV. P. 37(d); Chamber of Commerce of U.S. v. Edmondson, 594 F.3d 742, 766 (10th Cir. 2010). However, the Court "must not order this payment" if circumstances make an award of expenses and attorney fees unjust. FED. R. CIV. P. 37(a)(5)(A)(iii). Although the rule is couched in mandatory language, it is clear that the Court retains discretion to deny a request for attorney fees. *See*, Advisory Committee Note to Rule 37(a), 1970 amendment.

The Court therefore denies the request for sanctions, for an Order to Show Cause, and for attorney fees.

IT IS SO ORDERED.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge